STATE OF TENNESSEE ex rel. ROBERT JAMES VES,
Plaintiff in Error,

*v.*

LYNN BOMAR, Warden, Tennessee State Penitentiary,
Defendant in Error.

376 S. W. 2d 446

(*Nashville*, December Term, 1963.)

Opinion filed March 5, 1964.

488

Robert James Ves, pro se.

George F. McCanless, Attorney General, Henry C. Foutch, Edgar P. Calhoun, Assistant Attorneys General, for defendant in error.

Mr. Justice Holmes delivered the opinion of the Court.

This is a habeas corpus case in which the petitioner, who is now confined in the State Penitentiary, has appealed from the judgment of the Trial Court dismissing his petition for habeas corpus after a full hearing in that Court. The case is before this Court on the technical record in the habeas corpus proceeding.

The record discloses that on May 10, 1947 the plaintiff in error, hereinafter referred to as petitioner, was convicted of grand larceny in the Criminal Court of Knox County and sentenced to serve not less than three years nor more than five years in the State Penitentiary. On April 13, 1949 this sentence was commuted to petit larceny and the petitioner was paroled. Thereafter, in February 1950, he was returned to the State Penitentiary as a parole violator. While he was out on parole, petitioner committed two separate felonies, namely, housebreaking and larceny. On June 7, 1950 he pleaded guilty to both of these offenses and was sentenced to serve three years for each offense in the State Penitentiary, the sentences to run consecutively. He was discharged from the State Penitentiary on about March 7, 1954. On May 14, 1955 he was convicted in the Criminal Court of Knox County of the offense of burglary in the third degree and

also for being an habitual criminal. This last conviction was appealed to this Court on the technical record. The conviction was affirmed at the October 1955 term of this Court.

■ By the present appeal, petitioner first contends that the conviction of April 19, 1947, which was prior to the 1950 Amendments to the Habitual Criminal Act, T.C.A. secs. 40-2801 to 40-2807, cannot be counted as a prior conviction because to do so would make the statute *ex post facto*. This same contention was made in *McCummings v. State,* 175 Tenn. 309, 134 S.W.2d 151, and in *Conrad v. State,* 202 Tenn. 36, 302 S.W.2d 60. In each of these cases such contention was held to be without merit. In the Conrad case, at page 37 of 202 Tenn., at page 60 of 302 S.W.2d, the Court stated:

"All of the authorities hold that these habitual offenders statutes are not *ex post facto* even where the prior convictions occurred before the effective date of such statute."

The United States Supreme Court passed upon this same question in *Gryger v. Burke,* 334 U.S. 728, at page 732 of its opinion, 68 S.Ct. 1256, at page 1258, 92 L.Ed. 1683, in which the Court, stated:

"Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated

offense because a repetitive one. Cf. *Moore v. Missouri,* 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301; *McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542; *Graham v. West Virginia,* 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917; *Carlesi v. New York,* 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843; *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43."

See also 25 Am. Jur., Habitual Criminals, Sec. 5, Page 263.

■ The petitioner next contends that he was denied due process of law because he was indicted as an habitual criminal before he was tried for his fourth felony in May 1955. There is no requirement in the Tennessee habitual criminal statutes, T.C.A. sec. 40-2801 et seq., that the indictment as an habitual criminal must be returned after a fourth conviction. These statutes define an habitual criminal as ''[a]ny person who has either been three (3) times convicted within this state of felonies'' etc. In no sense was the petitioner denied due process of law by reason of the matters complained of in this assignment. See *Beeler v. State,* 206 Tenn. 160, 332 S.W. 2d 203.

By his third assignment of error, petitioner asserts:

"Petitioner was deprived of his right to a fair and impartial trial *and* due process of law when he was tried on the burglary charge and the habitual criminal charge at the same time and before the same jury."

■ The record before us on this appeal does not show how the criminal case was tried in May 1955. By this assignment of error, petitioner seeks to make a collateral attack upon the validity of the judgment in the criminal

492

case. In *State ex rel. Holbrook v. Bomar,* 211 Tenn. 243, 364 S.W.2d 887, this Court stated:

"It is well settled in this State that a petition for writ of habeas corpus may not be used to review or correct errors of law or fact committed by a court in the exercise of its jurisdiction; that the writ of habeas corpus cannot be used to serve the purpose of an appeal or writ of error. *State ex rel. v. West,* 139 Tenn. 522, 201 S.W. 743; *State ex rel. Dawson v. Bomar,* 209 Tenn. 567, 574, 354 S.W.2d 763; *State ex rel. Potter v. Bomar,* 209 Tenn. 577, 582, 354 S.W.2d 767."

\*      \*      \*      \*      \*      \*

" 'The writ of habeas corpus may not be employed as the means of assaulting a judgment of court unless the judgment assailed is void. *State ex rel. Grandstaff v. Gore,* 182 Tenn. 94, 98, 184 S.W.2d 366. The reason for this is that the use of the writ as the weapon of assault is a collateral, rather than a direct assault upon the judgment.' *Giles v. State ex rel. Giles,* supra, 191 Tenn. [538] 545, 235 S.W.2d [24] 28."

■ Petitioner next contends that because his 1947 conviction for grand larceny was later commuted to petit larceny that offense does not come within the purview of T.C.A. sec. 40-2801 et seq., and cannot be counted as a prior conviction. While the question presented by this assignment of error does not appear to have been passed upon by this Court, it has been before the courts in a number of states. Many of these cases are collected in 31 A.L.R.2d 1186. In *People v. Biggs,* 9 Cal2d 508, 71 P.2d 214, 215, 116 A.L.R. 205, in passing upon this question, the California Court stated, at pages 217, 218 of 71 P.2d:

"We are unable to see how the pardon, relieving the offender from the effects or disabilities of his first crime, can in addition prevent the normal application of the statute punishing him for a subsequent offense. In its provisions for increased punishment for prior offenders, the Legislature could doubtless make an exception in favor of persons pardoned, if it had reason to believe that such persons, though found guilty of a subsequent offense, were no more dangerous to society, because no more criminal in character, than persons first convicted. It has not seen fit to do so, and unless it does, this court cannot usurp the legislative function of determining the appropriate punishment for offenders coming within the statutory classifications."

In Wharton's Criminal Law & Procedure, 1957 Ed., Vol. 5, Sec. 2219, Page 439, it is stated:

"The majority view is that the pardon of a conviction does not preclude such conviction from being considered as a prior offense under a statute increasing the punishment for a subsequent offense."

In *Murray v. Hand,* 187 Kan. 308, 356 P.2d 814, the Court at page 815 of its opinion stated:

"The question of the effect of a pardon upon the use of a prior conviction as to the various habitual criminal laws is extensively annotated in 31 A.L.R.2d 1186. It is readily apparent that most of the states and the federal courts which have passed upon the question have held that even though a prisoner has received a pardon as to a prior felony conviction, the conviction may and should be used in determining his sentence upon subsequent conviction of a felony. At first, a few of the older cases held that the prior conviction had

been wiped from the records by the pardon and should not be used. This view has been largely discredited."

\* \* \* \* \* \*

"The Supreme Court of the United States has put to rest any thought that the majority holding of the states upon this question might violate the United States constitution by affirming the constitutionality of the construction given the habitual criminal act of New York by the Court of Appeals of that state in *Carlesi v. People of State of New York,* 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843. The construction of the California habitual criminal act in accord with the majority view was approved in *Groseclose v. Plummer,* 9 Cir., 106 F.2d 311, certiorari denied 308 U.S. 614, 60 S.Ct. 264, 84 L.Ed. 513."

In *Green v. Commonwealth,* Ky., 281 S.W.2d 637, 639, the Kentucky Court, in passing upon the question raised by this assignment of error, stated:

"Complaint is also made that testimony was improperly excluded to the effect that the Governor had commuted the original sentence and had restored Green to citizenship and that the jury had the right to take this matter into consideration. However, the Habitual Criminal Statute, KRS 431.190, provides that a person convicted a second time of a felony shall be confined to the penitentiary not less than double the time of the sentence under the first conviction and we do not believe it was anticipated that events subsequent to the sentence should be considered in mitigation. If such were the case, the force of this statute would be impaired." See also 24B C.J.S. Criminal Law sec. 1960 (8), page 476.

In accordance with the holdings of the overwhelming majority of jurisdictions that have passed upon this question, we hold that the fact that petitioner's 1947 conviction was commuted to petit larceny does not prevent that conviction for grand larceny from being counted as a prior conviction under our habitual criminal act.

The fifth assignment of error is:

"Petitioner contends discrimination was used against him when the state dropped the habitual indictments of two men with far worse records that were indicted at the same time, and pushed his indictment."

■ Of course, nothing appears in the record before the Court with reference to the matters complained of by this assignment. It is sufficient to state that the fact that some felons go unpunished is not a legal reason for releasing those who are convicted.

■ By his sixth assignment of error petitioner states:

"Petitioner contends the two (2) cases he pleaded guilty to on June 7, 1950 is only one (1) conviction in a habitual criminal prosecution."

This precise question was passed upon by this Court adversely to the contention of the petitioner in *State ex rel. Goss v. Bomar*, 209 Tenn. 406, 354 S.W.2d 243, in which the Court stated:

"It is not necessary to a conviction under the foregoing Code Section (T.C.A. 40-2801) that the defendant should have been tried and convicted on separate days."

The offenses to which the petitioner in this case pleaded guilty on June 7, 1950 were separate offenses, com-

mitted at separate times, and, as expressly held in the Goss case, constituted two convictions under T.C.A. sec. 40-2801. This assignment of error is overruled.

■ The seventh assignment of error is:

"Petitioner contends his indictment is improperly drawn up and contains flaws."

In just what particular petitioner contends his indictment as an habitual criminal was improperly drawn does not appear. By this assignment, petitioner makes a collateral attack upon the judgment in that case because of an alleged irregularity, which may not be done in a proceeding of this type. *State ex rel. Holbrook v. Bomar,* supra.

■ By his eighth assignment of error:

"Petitioner contends he should have been released when the Sixth Circuit Court of Appeals upheld Judge William E. Miller's decision in the Boyd case." *In re Boyd,* D.C.Tenn., 189 F.Supp. 113; *Bomar v. Boyd,* 6 Cir., 281 F.2d 195.

In the Boyd case, the Court held that the Tennessee habitual criminal act in its original form as enacted in 1939 was unconstitutional. In 1950 the act was amended and re-enacted by the Legislature in the 1950 Code Supplement. In the opinion of the United States District Court in the Boyd case, it is stated:

"Thus, the legislature of Tennessee itself apparently construed the original Act as being defective in not providing for sufficient notice and by subsequent legislation cured the defect by specifically requiring that a defendant be afforded the opportunity of having

notice prior to trial of the essential facts pertaining to any prior convictions to be relied upon." 189 F. Supp. 117.

The present habitual criminal act, which was the act in force at the time petitioner was tried and convicted in 1955, is not subject to the same constitutional objection that existed in the earlier act passed upon by the courts in the Boyd case. When the Legislature amended and re-enacted the habitual criminal statute in the 1950 Code Supplement, the matters which rendered the old act unconstitutional were removed from the statute. The act under which petitioner was convicted in the present case is constitutional and valid.

Petitioner's ninth assignment of error is:

"Petitioner was deprived of an opportunity to be heard on the habitual law."

By this assignment, petitioner contends he is entitled to have the writ of habeas corpus sustained because the appeal from his conviction as an habitual criminal came before this Court on the technical record without a bill of exceptions. The record before us in the present case does not show why a bill of exceptions was not filed in the criminal case. Petitioner does not contend that he is not the person who was convicted in each of the previous convictions relied upon by the prosecution as the basis of the conviction under the habitual criminal law. There is nothing in this record to indicate that the detention authorities in any way interfered with petitioner's appeal from his conviction as an habitual criminal. In an annotation in 19 A.L.R.2d 789, at page 799, it is stated:

"As stated in Section 3, in order to establish deprivation of the right to appeal, assuming that it might

become remedial in habeas corpus proceedings, it is necessary to show that performance of the prescribed requirements for taking and perfecting an appeal was interfered with by some unjustifiable statements, actions or omissions of the detention authorities.''

On the record before us, we concur in the finding of the Trial Judge ''that none of the Constitutional rights of the petitioner, Robert James Ves, have been violated.''

It results that the assignments of error are overruled and the judgment of the Trial Court is affirmed.