# DEWEY SCOTT FRAZIER, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 466 S.W.2d 535.

Court of Criminal Appeals of Tennessee. March 12, 1970.

Certiorari Denied by Supreme Court April 5, 1971.

---

Thomas McKinney, Kingsport, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Blountville, for defendant in error.

## OPINION

MITCHELL, Judge.

Dewey Scott Frazier, who will be referred to as the defendant or by name, represented by court appointed counsel, has appealed a conviction under the habitual criminal statute and a sentence of life imprisonment from the Criminal Court of Sullivan County, Tennessee, Honorable John K. Byers, Judge presiding.

On June 27, 1968, the Grand Jury returned an indictment against Dewey Scott Frazier, in the first count, charging burglary in the third degree of the business house of Kingsport Hardware Company, a corporation, and attempt to break or open a vault or safe therein in violation of T.C.A. § 39-904. The second count charged the defendant with becoming an habitual criminal, that he had been convicted of three felonious crimes committed at different times on different occasions, all in Sullivan County, to wit: (1) forgery July 9, 1964, with a sentence of one year and one day imprisonment; (2) July 13, 1964, five crimes of burglary with sentences of three years imprisonment in each of five cases, concurrently; (3) April 4, 1964, burglary and grand larceny with a sentence of three years imprisonment.

August 23, 1968, the Court found the defendant indigent and appointed Honorable Thomas McKinney, attorney at law, as counsel for him.

The case was tried September 12, 1968. The jury was duly empaneled, the District Attorney read the first count of the indictment to the jury, to which defendant's counsel stated, the defendant says he neither admits the

allegations nor neither does he deny the allegations in the indictment.

The Court then entered a plea of not guilty for the defendant. The District Attorney then introduced the state's proof which showed that the store of Kingsport Hardware Company and the safe therein were closed and locked at the closing hour on March 9, 1968. A few hours later about 10:35 P.M. alert police officers of the Kingsport Police Department discovered the front double doors of the store had been broken open, that there were marks on the doors which indicated they had been pried open or "popped." On closer examination they saw the defendant Dewey Scott Frazier crawling around on the floor inside among some cabinets and the safe in the rear part of the store.

The officers went into the store, arrested the defendant and took from him a wreckerbar or crowbar. The cabinet drawers had been pried open and marks or scratches were on the safe which indicated an attempt had been made to break into it. An employee of the store said those marks were not on the safe when he locked the safe and the store several hours earlier. Arresting officers testified the defendant was not drunk, but he had the odor of intoxicants on his breath, there was no evidence of the use of pills or drugs.

The defendant did not testify nor offer any proof.

The Court in an appropriate charge submitted the case to the jury on the first count. The jury reported a verdict finding the defendant guilty of safe-cracking and imposed a sentence of eight (8) years in the penitentiary.

The District Attorney then read to the Court and the.

jury the second count of the indictment charging the defendant with being an habitual criminal. The defendant, by his counsel, entered a plea of not guilty, the jury was then duly sworn and the District Attorney introduced the Deputy Circuit Clerk who read to the Court and the jury the records and minutes of the Court which showed the defendant had been convicted in the Criminal Court of Sullivan County on July 9, 1964, of forgery with a sentence of one year and one day imprisonment; on July 13, 1964, convicted of burglary in five cases and three years sentence in each case; April 4, 1964, convicted of burglary and grand larceny with a sentence of three years imprisonment. No proof was offered by the defendant, nor did he testify.

The Court then properly instructed the jury on the second count, after which the jury reported, "We find the defendant guilty as charged and fix the punishment at life imprisonment." The Court then inquired of the jury, "You've heard your foreman report that you found the defendant guilty of being an habitual criminal and fixed his punishment at life imprisonment. If that's the verdict of each and every juror, hold up their right hands." Every juror held up his right hand.

The trial judge addressed the defendant and pronounced judgment "that in accordance with the verdict of the jury finding you guilty of being an habitual criminal, the Court sentences you to the State Penitentiary and there to remain for the rest of your natural life."

The defendant filed a motion for a new trial, which was heard and overruled and the defendant appealed in error to this Court.

The errors assigned by the defendant will be considered in the order in which they appear in his excellent brief.

"Assignment No. 1

That there is no evidence to support the verdict of the jury.

That the verdict of the jury is contrary to the law and the evidence.

That the overwhelming weight of the evidence preponderates in favor of defendant's innocence and against his guilt."

In considering this first assignment we are bound by the well known rules which our appellate courts have consistently laid down and adhered to that a verdict of guilty, approved by the trial judge, accredits the testimony of the State's witnesses, resolves all conflicts in the testimony in favor of the State, and establishes the State's theory of the case. Under such a verdict the presumption of innocence disappears, and upon appeal, that presumption of innocence is replaced by a presumption of guilt. This Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the accused. We may review the evidence only to determine whether it preponderates against the verdict, and the defendant on appeal has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173;

Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Brown v. State, Tenn.Crim.App., 441 S.W.2d 485.

Although counsel has abandoned assignment No. 2, in as much as it is one of the errors assigned in the motion for a new trial, that the Court erred in overruling defendant's application for a continuance, we elect to consider it.

■ There is no showing that the defendant was prejudiced in denying his motion for a continuance. Whether to grant a continuance is in the sound discretion of the Court and his action will not be disturbed unless an abuse is shown. We do not think the Court abused its discretion in overruling the motion for a continuance. Rushing v. State, 196 Tenn. 515, 268 S.W.2d 563.

■ Assignment No. 3, in substance, is that it was error for the Court to fail to render judgment and sentence upon the verdict of the jury in finding the defendant guilty under the first count of the indictment and fixing the punishment at eight (8) years.

Assignment No. 4 is related to the preceding assignment and is to the effect that the Court committed error in reopening the matter and allowing the jury to increase the punishment after the verdict of guilty had been rendered on the first count and a sentence of eight (8) years imposed. The defendant complained that by this action he was placed in jeopardy in violation of the Fifth Amendment of the Federal Constitution.

Assignment No. 5 was to the effect that the Court erred in treating the second count of the indictment as a separate offense and in allowing the jury to reach a

verdict of guilty on this count alone and fixing the punishment at life imprisonment.

Assignments No. 3, No. 4, and No. 5 are related and will be considered by us together.

There was no necessity requiring the trial judge to render judgment on the verdict of the jury finding the defendant guilty of safe-cracking under the first count of the indictment and imposing a sentence of eight (8) years imprisonment the matter of the procedure was in his discretion. No prejudice resulted to the defendant.

The trial judge did not actually reopen the case when, after the verdict was rendered on the first count, he then submitted the matter to the jury on the second count of the indictment. He was following orderly steps in a progressive procedure in the trial of these cases which has been approved by our Supreme Court.

We do not think the trial judge treated the second count in the indictment as a separate offense.

In Harrison v. State (1965) 217 Tenn. 31, 394 S.W.2d 713, cited in defendant's brief the court said:—

"(1-3) Habitual criminal statutes do not create an independent crime but define a status prescribing circumstances under which there is an enhanced penalty for the present crime. To be more specific it is first necessary that the jury determine guilt of present crime (count one in the case at bar) before determining guilt or innocence of the habitual criminal count (count two in the case at bar) which finding, if guilty, enhances the punishment of the present crime. If the jury finds not guilty of the present crime then the

habitual criminal is not at issue. Tipton v. State, 160 Tenn. 664, 28 S.W.2d 635 (1930); McCummings v. State, 175 Tenn. 309, 134 S.W.2d 151 (1939); State ex rel. Grandstaff v. Gore, 182 Tenn. 94, 184 S.W.2d 366 (1945); Ex Parte Bailey, 60 Okl.Cr. 278, 64 P.2d 278, (1936); People v. Lamphear, 6 Ill.2d 346, 128 N.E.2d 892 (1955).

We are of the opinion no former jeopardy was involved in the procedure adopted in this case.

The trial court strictly followed the procedure adopted in Beeler v. State, 206 Tenn. 160, 161, 332 S.W.2d 203. That case was tried by Judge J. Fred Bibb, a trial judge of wide judicial experience and eminent legal qualifications. His action was approved in an able opinion by former Chief Justice Hamilton S. Burnett, who declared:

"A jury was impaneled and first tried the plaintiff in error on the first three counts, that is, whether or not he had committed burglary in the third degree. They found him guilty under these three counts and sentenced him to five years in the State penitentiary. Immediately after they had returned their verdict on the first three counts of the indictment the same jury was read the fourth count of the indictment which specifically charges three other separate and distinct convictions. After the proof was heard on this count of the indictment and the charge of the court the jury found him guilty of being an habitual criminal and he was sentenced accordingly to spend the rest of his natural life in the State penitentiary.

\*     \*     \*     \*     \*     \*

"The next assignment is to the effect that the court erred in trying the case piecemeal, that is, in trying the plaintiff in error under the first three counts of the indictment for committing burglary in the third degree and then after a conviction thereon in trying the plaintiff in error for being an habitual criminal, a requisite of which to make him so was the conviction for which he had just been convicted. It seems to us that instead of the trial judge being criticized for this procedure that he was being overly fair with the accused. By thus proceeding the only evidence as heard on the first three counts was the evidence as to whether or not the plaintiff in error was guilty of the charge as made in these counts of being guilty of burglary in the third degree. * * *

"By thus trying the lawsuit the evidence of the past character of the plaintiff in error and the crimes that he had committed was not before the jury in their consideration of this charge, that of burglary in the third degree—the only thing that they had before them was whether or not he was guilty of the charge under these three counts of the indictment.

* * * * * *

"A majority of the authorities hold that the identity of name of the defendant and the person previously convicted is prima facie evidence of the identity of the person, and in the absence of rebutting evidence, supports a finding of such identity.

* * * * * *

" 'It cannot be said that the prisoner was deprived of due process of law because the question as to

former conviction was passed upon separately. While it is familiar practice to set forth in the indictment the fact of prior conviction of another offense, and to submit to the jury the evidence upon that issue, together with that relating to the commission of the crime which the indictment charges, still in its nature it is a distinct issue, and it may appropriately be the subject of separate determination. Provision for a separate and subsequent determination of his identity with the former convict has not been regarded as a deprivation of any fundamental right. It was established by statute in England that, although the fact was alleged in the indictment, the evidence of a former conviction should not be given to the jury until they found their verdict on the charge of crime.

\* \* \* \* \* \*

" 'What has been said, and the authorities which have been cited, sufficiently show that there is no basis for the contention that the plaintiff in error has been put in double jeopardy, or that the plaintiff in error has been put in double jeopardy, or that any of his privileges or immunities as a citizen of the United States have been abridged. Nor can it be maintained that cruel and unusual punishment has been inflicted.' "

The assignment No. 6 is to the effect that the Court erred in failing to specifically inquire of the jury whether they found the defendant guilty of both the felony charged in the indictment and as an habitual criminal or whether the jury found him guilty of only the felony charged in the indictment, in violation of the following T.C.A. § 40-2805.

"*Verdict and judgment*—When an indictment or presentment charges an habitual criminal with a felony, as above provided, and also charges that he is an habitual criminal, as provided herein, upon conviction it shall be the duty of the trial judge to specifically inquire of the jury as to whether they find the defendant guilty both of the felony charged and also as an habitual criminal or merely of the felony charged in the indictment and the trial judge shall record the verdict of the jury and enter judgment accordingly."

In the trial of this case the trial judge first submitted the case to the jury on the first count charging burglary and safe-cracking. When the jury reported the Court inquired if the jury had reached a verdict which was answered in the affirmative, the Court then inquired, "What is your verdict?" The spokesman for the jury answered, "We find the defendant guilty as charged of safe-cracking and recommend a sentence of eight (8) years."

The Court then submitted the case to the jury on the second count charging the defendant with being an habitual criminal. When the jury reported on that charge, the Court inquired, "Gentlemen of the jury, have you reached a verdict?" The spokesman answered, "We have, we find the defendant guilty as charged." When asked about the punishment, the jury reported, "Yes, sir, at life imprisonment."

While this was not a literal compliance with T.C.A. § 40-2805, because such a compliance was not possible under the procedure adopted by the trial judge and approved by Beeler v. State, supra, however, we think it

was a substantial compliance. We think the purpose of the statute must have been to make certain the jury understood the matter of the verdict rendered and that the trial court fully understood what the verdict of the jury was.

No right of the defendant was violated and no prejudice resulted to him by the failure or impossibility of the jury to accomplish a precise compliance with the terms of the statute.

The assignments of error are overruled and the judgment of the trial court is affirmed.

We commend court appointed counsel for the excellent representation he has given the defendant in this case.

WALKER, P. J., and HYDER, J., concur.