**STATE of Tennessee Appellee,**

v.

**Linda Sue MARTIN
Defendant-Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Nov. 3, 1986.

Ronald W. Routson, Woods & Woods, Nashville, Charles W. Boyle, Atlanta, Ga., for defendant-appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

DROWOTA, Justice.

On direct appeal from the Criminal Court of Knox County, this case presents the issues of whether Tennessee's obscenity statutes, T.C.A. §§ 39–6–1101, *et seq.*, are unconstitutional because conflicting provisions result either in vagueness violative of due process or in arbitrary and discriminatory enforcement. Defendant, Linda Sue Martin, entered a plea of guilty to the charge of distributing obscene matter, but she specifically reserved her right to appeal on these constitutional questions.

On December 6, 1983, a Knoxville Police Officer, Ed Mitchell, entered West Knox News on Kingston Pike in Knoxville, Tennessee, and purchased a magazine from Defendant, who was employed as a sales clerk. The magazine, entitled *Shattering Orgasms,* cost $7.50 and contained graphic depictions of patently sexual conduct. On July 17, 1984, Defendant was indicted under T.C.A. § 39-6-1104(a) for distribution of obscene matter. Subsequently, Defendant voluntarily entered a plea of guilty on September 30, 1985. Being her first offense, she was sentenced as a Class A violator to 60 days in the Knox County Jail pursuant to T.C.A. 39-6-1104(d). Her sentence was stayed pending appeal. Defendant then brought her appeal to this Court to challenge the constitutionality of Tennessee's obscenity statutes.

█ This Court and the Court of Criminal Appeals have previously addressed the issues presented by this appeal. Suffice it to say that the United States Supreme Court has determined on numerous occasions that states may legislate concerning the distribution of obscene matter. *See, e.g., Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). So long as that legislation does not infringe upon recognized constitutional rights, is not unconstitutionally vague, and does not violate the equal protection or due process of the law, the State may enact legislation regulating and prohibiting the distribution of obscene matter. *See, e.g., Leech v. American Booksellers Association, Inc.,* 582 S.W.2d 738 (Tenn.1979); *Taylor v. State ex rel. Kirkpatrick,* 529 S.W.2d 692 (Tenn. 1975). *Cf. Capitol News Company, Inc. v. Metropolitan Government of Nashville and Davidson County,* 562 S.W.2d 430 (Tenn.1978) (State regulation of the distribution of obscene matter to minors may be supplemented by consistent local ordinances).

After this Court declared the Tennessee Obscenity Act of 1978 unconstitutional in *Leech v. American Booksellers Association, Inc., supra,* the prior obscenity law of this State was revived. In a number of challenges to the constitutionality of the current statutory provisions, the Court of Criminal Appeals has consistently held that the statutes as presently drafted do not suffer from any invalidating constitutional defects. *See, e.g., State v. Summers,* 692 S.W.2d 439 (Tenn.Crim.App.), *permission to appeal denied* (Tenn.1985); *State v. Hunt,* 660 S.W.2d 513 (Tenn.Crim.App.), *permission to appeal denied* (Tenn.1983); *State v. Davis,* 654 S.W.2d 688 (Tenn.Crim. App.), *permission to appeal denied* (Tenn. 1983); *State v. Runions,* 654 S.W.2d 407 (Tenn.Crim.App.), *permission to appeal denied* (Tenn.1983).

In this appeal, Defendant attacks the obscenity statutes on two interrelated grounds: (1) whether, when all parts of the statutes are construed together, the provisions of the statutes so conflict that they are incapable of providing adequate notice of the offense in violation of due process, and (2) whether the statutes, if facially constitutional, nevertheless allow unconstitutional application in an arbitrary and discriminatory manner in violation of the Fourteenth Amendment to the Federal Constitution. Given the existing state of Federal and Tennessee law, we must affirm the conviction and uphold the constitutionality of the statutes.

Defendant argues that the statutes contain inconsistent provisions that have been obscured in previous cases by focusing on particular provisions, preventing the overall vagueness of the statutes as a whole from being understood. This resulting vagueness of the whole makes knowing what conduct is considered unlawful impossible and permits arbitrary and discriminatory enforcement of the statutes. Citing the exemptions found in T.C.A. § 39-6-1117 and certain other provisions regulating the display of motion pictures or magazines, the Defendant contends that a person is left without adequate notice of what conduct is prohibited because the statutes seem both to regulate the distribution and use of obscene matter on the one hand, implicitly legitimating it, while purporting to prohibit its distribution on the other.

Such internal conflict results in a Hobson's choice whereby a person is required either to distribute sexually oriented matter at his own risk, without any way of knowing what will be considered obscene until too late, or to refrain from all distribution of such matter, which amounts to unconstitutional self-censorship that has a chilling effect on First Amendment rights.

■ This analysis is defective because the statutes do not and cannot prohibit the distribution of all sexually oriented matter; they only prohibit the transfer of obscene matter. T.C.A. § 39–6–1104(a). The definitions in T.C.A. § 39–6–1101 provide notice to any person desiring to distribute sexually oriented matter of the kinds of material that will be considered obscene. Legally acceptable matter is sold regularly in Tennessee. Further, the restrictions imposed by T.C.A. § 39–6–1114 do not have the effect or purpose of authorizing the showing of obscene motion pictures; rather this provision merely regulates the place in which a motion picture either that has been given a viewer advisory rating of " 'X' by a recognized movie rating authority or [that] depicts sexual conduct" may be shown. This regulation prevents non-consenting members of the public, who may be offended by such motion pictures, from becoming forced viewers; it also prevents the exposure of minors to this material. Obviously, a motion picture that fell within the definitions of T.C.A. § 39–6–1101 could still be obscene and subjected to the sanctions of the statutes, regardless of compliance with T.C.A. § 39–6–1114. Read with the other provisions, no inconsistency exists between the Legislature's prohibition on the transfer of obscene matter and the regulation of the place in which movies containing sexual conduct may be shown. Such motion pictures are shown daily throughout Tennessee. No protection is otherwise afforded by T.C.A. § 39–6–1114, however, to any obscene motion picture, since apart from the exceptions in T.C.A. § 39–6–1117, the statutes apply equally to the distribution of any obscene matter.

Similarly, T.C.A. § 39–6–1136, which regulates "displays of material of sexual nature," does not provide a special exemption or exception to the general prohibition on the distribution of obscene matter. All this statute does is control the manner in which "any magazine, book or newspaper containing ... material ... of a predominantly sexual nature" may be displayed in a place of business into which minors are permitted. This conclusion is strengthened by the fact that such materials may be openly displayed in an adult bookstore, where minors are not admitted. Again, this provision merely protects minors and is found among those sections of the obscenity law specifically relating to protection of minors. If a merchant should place an obscene magazine five and a half feet above the floor, he would still be subject to the other sanctions of the obscenity statutes. A number of well-known publications are regularly sold by merchants and these sellers have nothing to fear from T.C.A. § 39–6–1136 unless they display these materials at less than five and a half feet above the floor or in any other place readily accessible to persons under eighteen years of age.

Both T.C.A. §§ 39–6–1114 and 39–6–1136 serve comparable and compatible purposes in that they regulate the display of sexually oriented matter to prevent minors or others from inadvertent or involuntary exposure to such materials. The State has an interest in protecting the general public and minors from involuntary exposure to obscene materials. Such a purpose is the proper subject of legislation as long as the legislation is rationally related to legitimate state interests. *See State v. Hunt, supra,* at 517.

■ Defendant also argues that the exemptions provided by T.C.A. § 39–6–1117 add to the confusion over whether obscene matter is merely being regulated or is being prohibited by these statutes. The exemptions of T.C.A. § 39–6–1117 are narrowly drawn and sufficiently definite. *Cf. Leech v. American Booksellers Association, Inc., supra,* at 755 (Tying exempt status to tax status permitted unconstitu-

tional, inconsistent application of the obscenity statute). A purpose of these exemptions is to avoid snaring certain historically or educationally valuable materials in the web of this statutory net. Since Defendant's place of employment, a private club, does not even vaguely fall within any listed exemption, her claim that a person abiding by the terms of T.C.A. § 39–6–1117 or any of these other provisions cited above would still not be certain of avoiding prosecution lacks force. Not only have we found that a person conforming to the regulations in T.C.A. §§ 39–6–1114 or 39–6–1136 could nevertheless be subject to prosecution should the matter displayed be obscene, but West Knox News cannot be considered anything but an adult bookstore and does not fall within any exemption. We do not see how anyone could become confused as to the scope and application of these statutes simply because the Legislature has found it reasonable and necessary to provide for certain exemptions to promote and protect educational, historical, scientific, artistic, or social purposes. Exemptions of the kind found in T.C.A. § 39–6–1117 are classifications "based on grounds reasonably related to the achievement of a legitimate state objective." *State v. Davis, supra,* at 691. *See also State v. Hunt, supra,* at 517.

Defendant next contends that the obscenity statutes are arbitrarily and discriminatorily applied because the provisions improperly delegate legislative policy-making authority to members of the police and judiciary. Claiming that many stores other than adult bookstores sell matter that would be considered obscene under these statutes, Defendant asserts that while these distributors are not being prosecuted, adult bookstores are regularly the subjects of prosecutions. In Defendant's view, the statutes contain no guiding standards for determining which distributors of pornographic matter are to be prosecuted, leaving local officials uncontrolled discretion to determine when and against whom the obscenity law will be enforced. The law is capriciously applied because it does not provide sufficient notice of what conduct falls within its proscriptions. Consequently, in practice, only adult bookstores are the targets of enforcement activities under these statutes.

The circumstances in which the obscenity law has been enforced vary greatly. Some element of discretion is necessary for executive officers to carry out their duties efficiently. Clearly, where obscene matter is found being distributed, the distributor could be liable to prosecution. That more adult bookstores than other kinds of stores are the subject of enforcement activities results generally not from any abuse of discretion but from the fact that such establishments more regularly deal in matter that fits the definition of obscenity. This seems to be a function not of any selective prosecution but rather of the law of probability. Nor has Defendant shown on this record that her conviction has been the result of improper selective prosecution. The law is not thereby discriminatorily, arbitrarily, or capriciously applied. Nor does the fact that some offenders are not caught and punished deprive those who are equal protection of the law. *See, e.g., State ex rel. Ves v. Bomar,* 213 Tenn. 487, 495, 376 S.W.2d 446, 449 (1964). A criminal engages in illegal activity at his own risk. As a general proposition, so long as prosecution of a person does not arise from unconstitutional activities of the executive, improper selective prosecution, or to harass, the apprehended criminal cannot complain because, having been caught, he has thus been "selected" for prosecution.

In any effort to draft a statute, line-drawing becomes necessary, involving an element of discretion concerning the wording of the statute. We do not sit to edit the language of statutes. If "[t]he words used give adequate warning of the conduct proscribed and set out boundaries sufficiently distinct for courts to fairly administer the law," *Taylor v. State ex rel. Kirkpatrick, supra,* at 696, then the statute will not be considered vague. *See also State v. Strickland,* 532 S.W.2d 912, 921 (Tenn.1975). In this case, no person of common understanding and intelligence

could read T.C.A. § 39–6–1104 with these other provisions and reasonably conclude that if a person should keep obscene matter in a store five and a half feet from the floor or if a person displays an obscene motion picture in an enclosed place, such a person will not still be subject to the sanctions for distribution of obscene matter. The statutes punish the distribution of obscene matter under T.C.A. § 39–6–1104, regardless of the manner in which it is otherwise displayed. Moreover, violation of either T.C.A. § 39–6–1114 or 39–6–1136 carries separate punishments distinct from any violation under T.C.A. § 39–6–1104. The punishments under the provisions of T.C.A. § 39–6–1114 or 39–6–1136 could be imposed whether or not the matter displayed in violation of these sections was itself obscene.

The United States Supreme Court and this Court have recognized the authority of states to legislate in this area. Our Legislature has enacted obscenity statutes that have survived repeated attacks on their constitutionality. These statutes suffer from none of the defects that invalidated the Tennessee Obscenity Act of 1978. *See Leech v. American Booksellers Ass'n., Inc., supra.* The statutes have been applied to Defendant without constitutional error. Accordingly, the judgment of the trial court is affirmed. Costs are taxed to the Defendant, and the cause remanded to the trial court.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.